UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                  :

LIDIYA GUREVICH,                              :

                             Plaintiff,        :

                                                  :        06 Civ. 1646 (GEL)

    -against-                             :

                                                  :        **OPINION AND ORDER**

THE CITY OF NEW YORK, POLICE OFFICER  :
KOLANOVIC, SHIELD NO. 14340, and        :
POLICE OFFICER HAGAN, SHIELD NO. 1470, :
                                                  :
                             Defendants.      :
                                                  :
------------------------------------------------------------x

Michael Fineman, Esq., New York, NY, for Plaintiff.

Michael A. Cardozo, Corporation Counsel of the City
of New York (Barry K. Myrvold, Assistant
Corporation Counsel, of counsel), New York, NY,
for Defendants.

GERARD E. LYNCH, District Judge:

       Plaintiff Lidiya Gurevich brings this action pursuant to 42 U.S.C. § 1983 alleging that the City of New York and Police Officers Frank Kolanovic and John Hagan (collectively, "defendants") violated her constitutional rights by, inter alia, subjecting her to an illegal arrest. Plaintiff also asserts ancillary claims under New York State law for false imprisonment, assault and battery, and negligent hiring, training, and retention. Defendants have moved for summary judgment on numerous grounds, chiefly that the arrest was supported by probable cause. Plaintiff has also cross-moved for summary judgment. For the reasons discussed below, defendants' motion will be granted, and plaintiff's cross-motion will be denied.

**BACKGROUND**

On April 1, 2005, at about 7:00 p.m., Police Officers Kolanovic and Hagan, who were on patrol together in a marked car, received a radio call from a police dispatcher to respond to an apartment building on Benson Avenue in Brooklyn because a female reportedly refused to let a male remove his things from her apartment and the two were "fighting." (Myrvold Decl. Ex. 6; D. Rule 56.1 Stmt. ¶ 12.) The officers arrived at the apartment building shortly thereafter and were met by Eric Oganov and two of his friends. (Myrvold Decl. Ex. 4 ("Kolanovic Dep."), at 18:2-4; D. Rule 56.1 Stmt. ¶ 14.) Oganov told the officers that he used to live in plaintiff Gurevich's apartment in the subject building, and that Gurevich would not let him enter to retrieve certain of his belongings. (D. Rule 56.1 Stmt. ¶ 14.)

The two officers, accompanied by Oganov and his two friends, proceeded to the door of Gurevich's apartment. (Id. ¶ 15.) After Officer Kolanovic knocked on the door, Gurevich's son, Gene Yanenco, opened the door and confirmed to the officers that Oganov used to live in the apartment and had left behind some of his personal property. (Id. ¶ 16.) Yanenco then permitted the officers and Oganov to enter the apartment.[1] (Id.) Oganov told the officers that Gurevich had prevented him from retrieving a television set and computer that he had left behind. (D. Rule 56.1 Stmt. ¶ 22; Myrvold Decl. Ex. 2 ("P. Dep."), at 55:18-19.) Moments later, Gurevich emerged from her bedroom into the apartment hallway. (D. Rule 56.1 Stmt. ¶ 21.) Gurevich admitted to the officers that the television and computer belonged to Oganov, but she refused to relinquish those items until Oganov paid back monies that he allegedly stole from her. (Id. ¶¶

---

[1] Officer Kolanovic directed Oganov's two friends to stay in the hallway of the apartment building. (Kolanovic Dep. 22:10-14.)

22-23; P. Dep. 55:23-56:4.) The officers told Gurevich that she "must give back the items" or face arrest, but Gurevich persisted in her refusal and responded, "Okay. Arrest me." (P. Dep. 56:15-18.) The officers also allegedly called Gurevich a "Fucking Russian." (Id. at 56:6.)

According to the officers, "Gurevich was screaming, yelling and acting irrational . . ., was flailing her arms striking Kolanovic, was throwing and breaking small items, and attempted to lock the apartment door on the police officers with them inside." (D. Rule 56.1 Stmt. ¶ 25.) Gurevich denies making any physical contact with the officers, but admits that she was "very emotional," under "stress," and not "controlling" herself at the time. (P. Dep. 56:21-22, 57:11, 58:17-18). At 7:25 p.m., Officer Kolanovic contacted Sergeant Caro over the radio to request additional assistance. (D. Rule 56.1 Stmt. ¶ 28.) At 7:33 p.m., after Sergeant Caro arrived at the apartment, Officer Kolanovic handcuffed Gurevich, escorted her out of the apartment, and placed her in a police car. (Id. ¶¶ 29-30.) Gurevich was then taken to the 62nd Precinct. (Id. ¶ 33.)

Shortly after arriving at the precinct, Gurevich complained to the desk lieutenant, Lieutenant Delaney, that she was feeling ill and needed a doctor. (Id.) Lieutenant Delaney responded that he would call a doctor for her. (Id.) When an ambulance arrived half an hour later, Gurevich's handcuffs were removed and the paramedics conducted a physical examination (Id. ¶¶ 34-35.) At the direction of Lieutenant Delaney, Gurevich was released into the custody of paramedics and taken to Victory Memorial Hospital. (P. Rule 56.1 Resp. ¶ 45.) None of the officers accompanied her in the ambulance to the hospital. (D. Rule 56.1 Stmt. ¶ 37.) Lieutenant Delaney informed Officer Kolanovic that Gurevich's arrest would be voided and that she should be treated as an emotionally disturbed person. (Id. ¶ 38; Kolanovic Dep. 60:10-15.)

3

After more than twenty-four hours at Victory Memorial Hospital, Gurevich was discharged and returned to the precinct to lodge a complaint against the defendant officers. (P. Rule 56.1 Resp. ¶ 52.) Later that day, Gurevich continued to feel ill and went to Maimonides Hospital where she spent the next several days. (Id.)

On May 31, 2005, Gurevich served a Notice of Claim on the City of New York. (Compl. ¶ 28.) Gurevich commenced the instant action against the individual officers and the City of New York on March 2, 2006.

## DISCUSSION

I.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve disputed issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. Id. at 254-55. However, summary judgment may be granted "[i]f the evidence is merely colorable, or is not significantly probative." Id. at 249-50 (citations omitted).

The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). Once the moving party has made a showing that there are no genuine issues of material fact, the burden shifts to the nonmoving party to raise triable issues of fact. Anderson, 477 U.S. at 250.

A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the nonmoving party. Id. at 248.

II. Constitutional Claims

A. First, Fifth, Eighth, and Fourteenth Amendment Claims

Preliminarily, certain aspects of defendants' motion for summary judgment are uncontested. Defendants advance numerous arguments supporting their contention that plaintiff has failed to establish any violation of her First, Fifth, and Eighth Amendment rights, as well as her Fourteenth Amendment due process and equal protection rights. (See D. Mem. 13-17.) Plaintiff having failed to respond in any way to these arguments, and the Court having independently discovered no reason to decide otherwise, plaintiff is deemed to have abandoned any opposition to these, in any event meritorious, arguments. See Rosenblatt v. City of New York, No. 05 Civ. 5521, 2007 WL 2197835, at *10 n.7 (S.D.N.Y. July 31, 2007); Caraballo v. City of New York, No. 05 Civ. 8011, 2007 WL 1584202, at *3 (S.D.N.Y. May 31, 2007).

Accordingly, summary judgment is granted to defendants on these claims. The only claims that plaintiff attempts to defend, and thus the only claims remaining in this case, are plaintiff's constitutional claim of false arrest and her ancillary claims under New York State law.

B. False Arrest

1. Individual Officers

Defendants assert that summary judgment should be granted to them on plaintiff's false arrest claim because there is no genuine factual dispute that probable cause existed for plaintiff's arrest. Probable cause constitutes a complete defense to a claim of unconstitutional arrest. See Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999); Weyant v. Okst, 101 F.3d

845, 852 (2d Cir. 1996); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).[2] Whether probable cause for the arrest existed may be "determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Okst, 101 F.3d at 852.

Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (internal quotation marks omitted). Even if that information turns out to have been false, and even if that information supported a different charge than any actually filed, probable cause will be found as long as the arresting officer acted reasonably, given all of the circumstances, in relying on the information to believe that the arrestee had committed an offense. Devenpeck v. Alford, 543 U.S. 146, 152-54 (2004); Illinois v. Gates, 462 U.S. 213, 230-32 (1983); Bernard, 25 F.3d at 102-03. The existence of probable cause is based upon the totality of the circumstances at the time of the arrest, Bernard, 25 F.3d at 102, and "where law enforcement authorities are cooperating in an investigation . . . , the knowledge of one is presumed shared by all," Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989) (internal quotation marks omitted) (ellipses in original); United States v. Colon, 250 F.3d 130, 135-37 (2d Cir. 2001).

---

[2] To prove an unconstitutional arrest, a plaintiff must show (1) that defendants intended to confine her, (2) that she was conscious of her confinement, (3) that she did not consent to be confined, and (4) that the confinement was not otherwise privileged. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). Defendants do not dispute that plaintiff would be able to show the first three elements.

As defendants correctly assert, Officers Kolanovic and Hagan clearly had probable cause to arrest Gurevich for the crime of petit larceny.[3] Under New York law, "[a] person is guilty of petit larceny when he steals property." N.Y. Penal Law § 155.25. "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." Id. § 155.05(1). Gurevich offers no evidence to dispute defendants' testimony that when the officers arrived at the apartment building, Oganov told them that he used to live with Gurevich and that she would not let him retrieve certain belongings that he had left behind in her apartment.[4] See Caraballo, 2007 WL 1584202, at *5 ("[W]hen an officer has received information from some person — normally the putative victim or eyewitness — who it seems reasonable to believe is telling the truth, he has probable cause." (internal quotation marks omitted)). Gurevich herself, moreover, testified that she admitted to the officers that she did not own the television and computer that Oganov had left behind, and that she refused to return those items to Oganov even after being informed by the officers that she "must give back the

---

[3] Defendants also claim that the officers had probable cause to arrest plaintiff for the crime of obstructing governmental administration in the second degree. See N.Y. Penal Law § 195.05. (D. Mem. 6-7.) Because probable cause existed to arrest plaintiff for petit larceny, the Court need not address defendants' alternative argument.

[4] Although Gurevich argues that Oganov's statements to the officers are inadmissible hearsay (P. Mem. 5-6), defendants do not offer these statements to prove the truth of the matter asserted. See Fed. R. Evid. 801(c) (defining "hearsay" as an out-of court-statement "offered in evidence to prove the truth of the matter asserted"). The issue in this case is not whether Gurevich stole Oganov's property, but rather, the nature of the information possessed by the arresting officers. Defendants use Oganov's statements to prove the adequacy of the officers' information to justify the arrest. What matters is not whether Oganov's statements were true, but rather, whether Oganov made the statements to the officers. Accordingly, Oganov's statements are not hearsay.

items" or face arrest. (P. Dep. 55:23-56:4, 56:15-18.) Although Gurevich allegedly told the officers that she was holding onto Oganov's property because he owed her money, the mere existence of a debt did not legitimize Gurevich's withholding of the television and computer from Oganov, who had a "superior right to possess the [items], notwithstanding the alleged debt." People v. Richardson, 389 N.Y.S.2d 14, 16 (1st Dep't 1976); see N.Y. Penal Law § 155.00(5) (defining "owner" as "any person who has a right to possession [of the stolen property] superior to that of the taker, obtainer or withholder").[5] Accordingly, Oganov's statements to the officers, coupled with Gurevich's own admissions and her continued refusal to return the property to Oganov, clearly established probable cause to arrest Gurevich for petit larceny based on her wrongful "withhold[ing]" of property from Oganov. N.Y. Penal Law § 155.05(1); id. § 155.25.

Gurevich's chief objection to a finding of probable cause is her contention that asportation (i.e., movement) of the stolen property is a required element of larceny, and that the officers had no evidence that Oganov's property had been carried off by Gurevich. (P. Mem. 3-5.) Although asportation was an essential element of larceny at common law, the New York Court of Appeals has recognized that it is not "strictly bound to the ancient common-law concepts of larceny." People v. Alamo, 34 N.Y.2d 453, 457, 459 (1974). With regard to asportation specifically, the Court of Appeals has stated that "[c]ase law . . . now tends to focus

---

[5] Although Gurevich now suggests that the parties entered into an agreement whereby Gurevich would hold onto the television and computer as collateral for the monies owed to her by Oganov (P. Mem. 5, 7), nothing in the record suggests that the officers were ever informed of any such agreement by Gurevich or anyone else at the time of the incident. A police officer is not required "to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. NYC Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997).

8

upon the . . . exercise of dominion and control over the property," People v. Olivo, 52 N.Y.2d 309, 317 (1981), and that "the fact of movement merely tend[s] to support the idea of control," Alamo, 34 N.Y.2d at 457; id. at 458 (holding that "movement or motion is not essential to [establishing] control" of stolen automobile). Here, it is uncontroverted that Gurevich exercised the requisite control over Oganov's personal belongings in her apartment as she successfully prevented Oganov from retrieving those items on his own, thus forcing him to call the police for assistance.

Moreover, it appears that asportation is not even a relevant consideration where, as here, larceny is committed by wrongfully "withhold[ing]" property. N.Y. Penal Law § 155.05(1). The asportation requirement originated in conjunction with the common-law definition of larceny — i.e., "a trespassory *taking and carrying away* of the property of another with intent to steal it." Olivo, 52 N.Y.2d at 315 (emphasis added). When larceny is committed by trespassory taking, requiring a showing of asportation makes conceptual sense as the "purpose of the asportation element . . . is to show that the thief had indeed gained possession and control of the property." Id. at 318. Modern penal statutes, however, have significantly expanded the definition of larceny. See id. at 315-17. Under the governing New York statute, a person "commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or *withholds* such property from an owner thereof." N.Y. Penal Law § 155.05(1) (emphasis added). Unlike a common law larceny that required the wrongful "tak[ing]" of property, larceny committed by the wrongful "withhold[ing]" of property does not contemplate movement of the stolen property. For this

reason, the Court declines to "slavishly adhere to the auxiliary common-law element of asportation." Alamo, 34 N.Y.2d at 460.

Gurevich's remaining contention is that the officers violated her Fourth Amendment rights because they arrested her inside her apartment without a warrant. In United States v. Payton, the Supreme Court held that the Fourth Amendment "prohibits the police from making a warrantless and *nonconsensual entry* into a suspect's home" in order to effectuate an arrest. 445 U.S. 573, 576 (1980) (emphasis added). Here, the record unequivocally demonstrates that although the officers did not possess a warrant, they did obtain the requisite consent to enter Gurevich's apartment. Indeed, both officers testified specifically that Gurevich's son gave them (and Oganov) permission to enter. (See Kolanovic Dep. 23:3-8, 23:12-15; Myrvold Decl. Ex. 5 ("Hagan Dep."), at 25:13-15.) Although Gurevich purports to dispute the officers' testimony (see P. Rule 56.1 Resp. ¶ 16), she offers no contrary testimony from her son or any other source. It is uncontroverted, moreover, that after their consensual entry into the apartment, the officers received verification from Gurevich that Oganov had left certain items in the apartment, that Gurevich refused to return those items to Oganov, and that, as a result of her refusal, Gurevich was placed under arrest. Under these circumstances, no violation of plaintiff's Fourth Amendment rights occurred.[6]

---

[6] To the extent plaintiff premises her 42 U.S.C. § 1983 claim based on the officers' alleged pejorative language, the claim must be dismissed as a matter of law because, "[a]lthough indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under section 1983." Harris v. Lord, 957 F. Supp. 471, 475 (S.D.N.Y. 1997); see Cotz v. Mastroeni, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007).

2. City of New York

Defendants assert that plaintiff's claims against the City of New York should be dismissed because plaintiff has failed to adduce any evidence that could support a finding of municipal liability under § 1983. (D. Mem. 10-13.) In Monell v. Department of Social Services of the City of New York, the Supreme Court held that a municipality is a "person" within the meaning of 42 U.S.C. § 1983 and can incur liability pursuant to that statute. 436 U.S. 658, 690 (1978). Claims against a municipality under § 1983 may proceed, however, only if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is conducted "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91.

As explained above, Gurevich has failed to establish that the defendant officers deprived her of any constitutional right, thus necessarily dooming any claim of municipal liability against the City. Even if Gurevich could establish a constitutional deprivation by the individual officers, moreover, her municipal liability claim is fatally flawed. Gurevich contends that the City is liable for the individual officers' actions because those actions were ratified by "a final policymaker," namely, Lieutenant Delaney. (P. Mem. 14-16.) See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (noting that a municipality may be held liable if a subordinate's decision is "ratifi[ed]" by "authorized policymakers"). Gurevich, however, has failed to adduce any evidence demonstrating that Lieutenant Delaney was an official with "final policymaking authority." Id. at 123 (internal quotation marks omitted). "The fact that a particular official — even a policymaking official — has *discretion* in the exercise of particular

functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 (1986) (emphasis added); see Praprotnik, 485 U.S. at 127 ("When an official's discretionary decisions are constrained by policies not of that official's making, those policies . . . are the act of the municipality."). At best, Lietuenant Delaney had the discretionary authority to make a final decision regarding Gurevich's arrest, but "[a]uthority to make a final decision need not imply authority to establish rules." Auriemma v. Rice, 957 F.2d 397, 401 (7th Cir. 1992). Gurevich has not presented any evidence that Lieutenant Delaney was "responsible for establishing final government policy" with regard to arrests in the 62nd Precinct. Pembaur, 475 U.S. at 483; see Jeffes v. Barnes, 208 F.3d 49, 57-58 (2d Cir. 2000) (holding that plaintiff bears burden of establishing that conduct of official represents official policy). Accordingly, even if Gurevich could establish an unconstitutional arrest by the individual officers, her Monell claim against the City would fail because she cannot demonstrate ratification of that arrest by a municipal official with final policymaking authority.

III.     State Law Claims

         A.     Assault and Battery

Under New York law, a civil assault is "an intentional placing of another person in fear of imminent harmful or offensive contact"; a civil battery is "an intentional wrongful physical contact with another person without consent." Charkhy v. Altman, 678 N.Y.S.2d 40, 41 (1st Dep't 1998) (internal quotation marks omitted). Although plaintiff feebly asserts that "defendants concede that the plaintiff has set forth an assault and battery" (P. Mem. 15), defendants clearly have not made such a concession. Indeed, defendants correctly contend that

12

Gurevich has failed to establish a prima facie case of either assault or battery as plaintiff has not come forward with any proof whatsoever regarding the officers' intent to place her "in fear of imminent harmful or offensive contact" or to make "wrongful physical contact . . . without [her] consent." Altman at 41. Under New York law, moreover, an officer "may use physical force when and to the extent he or she reasonably believes . . . necessary to effect the arrest." N.Y. Penal Law § 35.30(1); see Lederman v. Adams, 45 F. Supp. 2d 259, 268 (S.D.N.Y. 1999). As explained above, the officers had probable cause to arrest plaintiff, and it is undisputed that "[a]part from touching Gurevich to place and remove handcuffs, neither of the officers touched her" and that "[t]he handcuffs did not cause Gurevich any pain." (D. Rule 56.1 Stmt. ¶ 42.) In light of these uncontroverted facts, Gurevich's assault and battery claims are meritless.

  B.  Negligent Hiring, Training, and Retention

Finally, plaintiff's claim of negligent hiring, training, and retention against the City fails as a matter of law because "[a] claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment." Rowley v. City of New York, No. 00 Civ. 1793, 2005 WL 2429514, at *12 (S.D.N.Y. Sept. 30, 2005); see Colodney v. Continuum Health Partners, Inc., No. 03 Civ. 7276, 2004 WL 829158, at *9 (S.D.N.Y. Apr. 15, 2004) (holding that "[w]hen an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence only under a theory of *respondeat superior*, and no claim may proceed against the employer for negligent hiring or retention"); Karoon v. New York City Transit Auth., 659 N.Y.S.2d 27, 29 (1st Dep't 1997). Here, the City concedes that the defendant officers were acting within the scope of their employment at all relevant times. (D. Mem. 20-21.) Accordingly, plaintiff's claim for negligent

hiring, training, and retention is barred as a matter of law. See Rowley, 2005 WL 2429514, at *13; Kramer v. City of New York, No. 04 Civ. 106, 2004 WL 2429811, at *12 (S.D.N.Y. Nov. 1, 2004); Griffin v. City of New York, 287 F. Supp. 2d 392, 397-98 (S.D.N.Y. 2003).[7]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety, and plaintiff's cross-motion for summary judgment is denied. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: New York, New York
January 10, 2008

GERARD E. LYNCH
United States District Judge

---

[7] Although plaintiff's complaint also raises a state law false imprisonment claim (Compl. ¶¶ 46-52), "[a] § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law," Okst, 101 F.3d at 852, and "[i]n New York, the tort of false arrest is synonymous with that of false imprisonment," Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991). Accordingly, the Court's disposition of plaintiff's § 1983 claim of false arrest disposes of plaintiff's state law claim of false imprisonment.

14